**FORM TO BE USED BY FEDERAL PRISONERS FOR FILING A PETITION FOR WRIT OF HABEAS CORPUS UNDER TITLE 28 U.S.C. § 2241**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE**

David Wattleton
_____
Petitioner

Reg. No. 50260-019
FMC-Devens, P.O. Box 879
Ayers, Massachusetts 01432
(Full name under which you were convicted;
Prison Number; Full Mailing Address).

**04-40185**

VS.                                           CIVIL ACTION NO._____

David Winn, Warden
_____
Respondent(s)

FMC-Devens
P.O. Box 880
Ayers, Ma 01432
(Name of Warden or other authorized person
having custody of Petitioner).

**PLEASE COMPLETE THE FOLLOWING. READ THE ENTIRE PETITION BEFORE FILLING IT OUT. ANSWER THOSE QUESTIONS WHICH PERTAIN TO YOUR TYPE OF CLAIM.**

1. This petition concerns: (check appropriate blank)

   _____ A conviction
   _____ A sentence (**CAUTION:** If you are attacking a sentence imposed under a Federal Judgment, you must file a direct motion under 28 U.S.C. § 2255 in the Federal Court which entered the Judgment).
   _____ Jail or prison conditions
   _____ Prison discipline issue
   _____ A parole problem
   __X__ Other. State briefly: ___INVOLUNTARY COMMITMENT___

2. Place of detention: ___FMC-Devens , Ayers, MA___

1

**HAVE YOU FILED PREVIOUS PETITIONS FOR HABEAS CORPUS MOTION UNDER TITLE 28 U.S.C. § 2255, OR ANY APPLICATIONS, PETITONS OR MOTIONS WITH RESPECT TO THIS CONVICTION?**

__X__ Yes     _____ No

3. If your answer is "yes," give the following information:

a. Name of the Court: U.S. DISTRICT COURT FOR NORTHERN GEORGIA, ATLANTA

b. Nature of proceeding: MOTION TO VACATE SENTENCE = COMMITMENT

c. Grounds raised: INEFFECTIVE ASSISTANCE OF COUNSEL

d. Result: DENIED

e. Date of result: DECEMBER 2003

f. Citation or number of any written opinion or order entered pursuant to each such disposition: N/A

4. If you did not file a motion under section 2255 of Title 28 U.S.C., or if you filed a motion and it was denied, state why your remedy by way of such motion is inadequate or ineffective to test the legality of your detention:

See attached

5. Does counsel presently represent you? _____ Yes __X__ No

If so, Name address and phone number of counsel:

6. Name and location of court, which imposed sentence: U.S. DISTRICT COURT FOR NORTHERN GEORGIA, ATLANTA

2

1:99-CR-306-TWT

7. Indictment or case number, if known: _____

8. Offense or Offenses for which sentence was imposed: __18 U.S.C. section 844(e)__

9. Date upon which sentence was imposed and the term of the sentence: __August 8, 2000__

10. When was a finding of guilt made? (Check one)
    _____ After a plea of guilty

    _____ After a plea of not guilty

    _____ After a plea of Nolo Contendre        __X__ NGRI

11. If you were found guilty after a plea of not guilty, was that finding made by:
    __X__ A jury

    _____ A judge without a jury

12. Did you appeal the judgment of the conviction or the imposition of a sentence?  __X__ Yes  ____ No

13. If you did appeal, give the following information for each appeal:

a. Name of court: __ELEVENTH CIRCUIT COURT OF APPEALS__

b. Result: __DENIED__

c. Date of result: __JULY 2002__

d. Citation or number of opinion: __296 F.3d 1134 (11th Cir 2002) ?__

e. Grounds raised: (List each one)

Whether Imposition of insanity defense violates due process
Whether Shift Burden to defendant violates due process
Whether District Court Improperly Considered Criteria in Dangerousness

**NOTE: If you appealed more than once, attach an additional sheet of paper the same size, give all the information requested above in question number 13, a through e. DO NOT WRITE ON BACK OF PAGE.**

14. Summarize <u>briefly</u> the facts supporting each ground. If necessary attach a single page behind this page.

**CAUTION:** If you fail to set forth all grounds in this petition, you may be barred from presenting additional grounds at a later date.

a. Ground one: ___see attached___

Supporting Facts: (Tell your story BRIEFLY without citing cases or law. You are CAUTIONED that you must state facts not <u>conclusions,</u> in support of your grounds. E.g., who did exactly what to violate your rights at what time or place).

see attached

b. Ground Two:
see attached

Supporting Facts: see attached

Ground Three:
see attached

Supporting Facts: see attached

15. If this petition concerns jail or prison conditions, prison discipline, a parole problem or other cause under 28 U.S.C. § 2241, answer the following:

a. Did you present the facts in relation to your present complaint in the internal prison grievance procedure?

_____ Yes _____ No

(1) If your answer to "a" above is yes, what was the result? _____
_____
_____

(2) If your answer to "a" above is no, explain: _____
_____
_____

b. Did you present your claim to the Bureau of Prisons or other federal agency for administrative action?

_____ Yes _____ No

(1) If your answer is "yes," state the date such claim was submitted and what action, if any has been taken:
_____
_____

(2) If your claim has not been acted on, attach copies of any correspondence you have received from the Bureau of Prisons or other federal agency concerning you.

c. **STATEMENT OF CLAIM:** State here as briefly as possible the facts of your case. DO NOT give any legal arguments or cite any cases or any statutes. Attach extra pages of the same size to this page if more room is necessary. DO NOT write on the reverse side of this page.

~~N/A~~    SEE ATTACHED

**16. RELIEF:** state briefly what you want the court to do for you. Make no legal arguments. Cite no cases or statutes.

See attached

Signed on this the ___13___ day of ___September___, 200_4_.

_____
Signature of petitioner

**I DECLARE (OR CERTIFY, VERIFY OR STATE) THAT THE FOREGOING IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE OR INFORMATION AND BELIEF AND THAT ANY FALSE STATEMENTS MADE THEREIN ARE MADE SUBJECT TO THE PENALTIES OF APPLICABLE LAWS RELATING TO UNSWORN FALSIFICATIONS TO AUTHORITIES.**

**Executed on:** ___September 13___, 200_4_.

_____
Signature of petitioner

6

The petitioner, David Wattleton, through pro se, hereby files this 28 U.S.C. section 2241 seeking to challenge the fundamental legality of his mental health confinement. He believes that his involuntary commitment pursuant to 18 U.S.C. section 4243 is unlawful and unconstitutional and request for immediate release from such illegal confinement. He further asserts that because he has been found not guilty of a criminal offense by reason of insanity the only obstacle standing in the way of filing his section 2241 petition is whether he can do so without the assistance of counsel. The answer to that question is yes.

Mr. Wattleton argues that the only specific published case that directly addresses the question of whether an insanity acquittee can file a section 2241 seeking to be release from an unlawful or unconstitutional mental health commitment is <u>Archuletta v Hedricks</u>, 365 F.3d. 644 (8th Cir 2004). In <u>Archuletta</u> the Eighth Circuit Court of Appeals held that, " the statute under which Archuletta is committed does not preclude a person ' from establishing by Writ of Habeas Corpus the legality of his detention.'" <u>Id</u> at 647. In the instant case Mr. Wattleton believes that <u>Archuletta</u> is accurate in a legal sense in establishing his lawful right to file his section 2241 and he asserts that this Court has jurisdiction over his section 2241 under either section 4247(g) or section 4247(b) or both.

1

II. WHETHER THIS COURT SHOULD HOLD A DAUBERT HEARING TO DETERMINE WHETHER THE DECISION TO COMMIT WATTLETON WAS MADE IN THE EXERCISE OF PROFESSIONAL JUDGMENT

Mr. Wattleton believes that his initial and subsequent involuntary commitment was sustained and perpetuated by methods that fall below the generally accepted medical standards of the scientific community. He request that this Court should hold a hearing to determine whether the government's mental health expert performance meets the fundamental standards for admissibility of expert opinion evidence under <u>Daubert v Merrel Dow Pharmaceutical Inc.</u>, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d. 469 (1993). He asserts that should this Court conduct the Daubert hearing on the admissibility of the government's expert opinion this Court will find that the forensic analysis are not consistent with the ethical guidelines prescribed by the American Psychological Association in its manual on forensic examination. He further argues that the methods inwhich the experts employed and the reasoning on the issue of Detectives' Orivville Tucker and Gordon Houghton version of what occurred during their encounter with Mr. Wattleton is insufficient to permit a indefinite involuntary commitment.

2

In determining the question of the scientific reliability of the methodology used by the government's experts to formulate their opinion and conclusions as to Mr. Wattleton's mental state the question becomes to what degree of certainty must doctors possess before they can recommend continued indefinite involuntary commitment. Mr. Wattleton believes that involuntary committed individuals retain the right to be committed based on decisions made in the exercise of professional judgment. See, <u>Youngberg v Romeo</u>, 457 U.S. 307, 324 (1982). And Mr. Wattleton argues that the proper standard of care for " forensic psychological ( or psychiatric ) evaluations for use by the courts... is governed by both ethical guidelines and specific statutory requirements.'" See, <u>United States v Falcon</u>, 245 F.Supp.2d. 1239, 1243-44 (S.D.Fla. 2003)(challenging the scientific reliability of expert testimony). In <u>Falcon</u> the district court noted that the defendant's psychological expert did not administer the appropriate psychological tests, conducted an extended clinical interview, reviewed any relevant empirical research, or spoken with any witnesses. In the instant case Mr. Wattleton argues that at the dangerousness hearing pursuant to 18 U.S.C. section 4243 the district court improperly considered the following evidence in determining his mental illness and dangerousness;

3

mental health search and seizure. At trial Mr. Wattleton testified that he felft " pinned in " and not free to ignor the police presence and go on about his business. Additionally Detective Tucker testified that Mr. Wattleton accussed them of " following him around the country " and jurors considered this statement as evidence of psychosis. And failing to corroborate this information violated minimum clinical standards of psychiatry and psychology.

Moreover, although no one particular factor was relied on by the district court in determining mental illness or dangerousness in aggregate each of these unsupportable factors is an essential feature of a delusional disorder. And a person is believed to suffer this disorder if he satifies each of these criteria. Without them there is nothing by which to distinguish Mr. Wattleton's behavior from anothers. Additionally, but more importantly failure to disclose the Minnesota Multiphasic Personality Inventory (MMPI-2), test results deprived Mr. Wattleton of the opportunity to attack the government's expert's testimonial conclusions on several grounds, amoung them, the limitation on their examination and testing. He believes that he answered all the questions on the MMPI-2 test in a pertinent and rational manner. However, the question that begs to reason is why doctors would jeopardize the government's case by presenting the functional equivalent

4

of perjured evidence when allegedly the MMPI-2 test result would have characterized Mr. Wattleton as paranoid. He believes that there are at least two correct interpretations of the MMPI-2 test and, even if he did not complete the test or answer all the questions, one of those correct interpretations is favorable to him. That is, the MMPI-2 test results did not give evidence of a thought disorder which would be consistent with a delusional disorder.

Mr. Wattleton believes that the reason that his case is the first in the United States where the government voluntarily presented insanity evidence and requested an insanity verdict was because they viewed his crime as a protest of which a finding of insanity would denigrate and forever close all avenues of redress or vindication for a violation of Mr. Wattleton's Fourth Amendment rights caused by the intrusion into his private place of business by Detectives' Tucker and Houghton of the Roswell, Georgia police department. And the government's mental health experts were under pressure from the government to characterized the presence of a delusional disorder and they engaged ina conspiracy to tamper with Mr. Wattleton's medical records and falsify his evaluation to " cover-up " and manipulate his diagnosis and treatment to validate their opinions. He believes that the government's experts' performance fell below the generally

5

accepted standard of medical practice in the community because they failed to perform a more comprehensive clinical examination of him and used collateral sources to verify the integrity of the information obtained from victims and witnesses. Mr. Wattleton believes that erroneous commitments cause greater harm and due process requires greater protection against erroneous commitments. Such protection requires layers of adminstrative and judicial scrunity to ensure that in cases where the government imposes an insanity defense that experts associated with the government, whose professional judgment favors commitment does not leave unexplored or unanswered questions regarding disputed evidence or testimony between the information that the defendant has provided and that obtained by the government's expert.

   III. WHETHER THIS COURT SHOULD CONSIDER AN INEFFECTIVE PSYCHIATRIC ASSISTANCE CLAIM IN DETERMINING SCIENTIFIC RELIABILITY

Mr. Wattleton argues that, unlike <u>Archuletta</u>, he should be permitted to collaterally attack his successful insanity verdict. He believes that it would be virtually impossible for him to challenge the legailty of his confinement without an argument that he received ineffective psychiatric assistance at trial and on direct appeal. He asserts that he can establish that he did not consent, either expressly or

6

tacitly, to a mental capacity defense. He further argues that the quality of the evidence that the court appointed psychiatrist provided in asserting the mens rea defense was inadequate and lacking in depth and scope which rendered the entire proceeding fundamentally unfair. Mr. Wattleton believes that he did not agree to a mens rea defense and the district court knows with certainty that there was another viable defense available. A duress by itself might have avoided an involuntary commitment. The evidence that defense counsel provided to the court appointed psychiatrist was incomplete and was not helpful to Mr. Wattleton in presenting his duress defense. The duress defense was unsuccessful because Mr. Smith, trial counsel for Mr. Wattleton asserted conflicting defenses. He argues that " his will was overborne " by Mr. Smith's vulgar cunning. See, <u>United States v Teague</u>, 953 F.2d 1525 (11th Cir 1992).

At a hearing held November 5, 1999 in the district court Mr. Wattleton expressed his dissatisfaction with Mr. Smith's decision to withhold exculpatory evidence from Julie Rand, M.D., the court appointed psychiatrist. He told the court that the exculpatory evidence he wanted Dr. Rand to review would have proved that his belief in a police surveillance conspiracy is held with less than delusional intensity. He explained to the court that he believed Mr. Smith was trying

7

to manipulate the evaluation to make him seem incompetent to stand trial. Mr. Wattleton requested that the court to remove Mr. Smith from his case and assign another public defender.

The court denied his request but several weeks later he wrote the court again renewing his request which was again denied. Thus, the record supports Mr. Wattleton's request for new counsel and a conflcit between him and Mr. Smith. Even more importantly, the record indicates that Mr. Wattleton urged and reurged Mr. Smith to subpoena witnesses material and favorable to his defense by writing letters to Mr. Smith and the court. Moreover, Mr. Wattleton did not testify that he was suffering from a mental disorder, but testified that his criminal misbehavior was the product of fear and intimidation.

Mr. Wattleton believes that had Dr. Rand been provided with the exculpatory evidence he wanted her to review she might have been more inclined to seek corroboration andmmmmhmmmmh interview collateral sources to verify the varacity of Detectives' Tucker and Houghton testimony. Perhaps Dr. Rand could have been asked whether she believed the detectives testimony. Mr. Wattleton argues that given the strong incentive tó testify falsly it was unreasonable to allow Dr. Rand to give an opinionwithout providing her with

8

the exculpatory evidence. Mr. Wattleton believes that if she were permitted to review the letters he received from the Roswell police department regarding tte alleged unlawful mental health search and seizure and the letter from the Equal Employment Opportunity Commission regarding the alleged wrongful termination the outcome of thetrial would have been different. That is, Dr. Rand might not have concurred with the conclusion that Mr. Wattleton suffers from a delusional disorder.

IV.  WHETHER WATTLETON MUST EXHAUST ALL HIS ADMINSTRATIVE REMDIES BEFORE FILING HIS SECTION 2241 PETITION

Mr. Wattleton believes that he is appealing his initial and subsequent involuntary commitment and therefore he must exhaust all his administrative remedies, See, <u>Miller v Blalock</u>, 356 F.2d 273 (4th Cir 1966)(exhausting requirement apply to involuntary commitment). Mr. Wattleton asserts that he has exhausted his adminstrative remedies and will provide proof of such on ddmand.

V.  WHETHER APPELLATE COUNSEL FAILED TO RAISE THE ISSUE THAT THE GOVERNMENT VIOLATED <u>RULE 16</u> PRE-**TRIAL** DISCOVERY

Mr. Wattleton believes that although Detective Tucker was a witness for the defenses casé-in-chief the government

9

had an obligation to produce the videotaped conservation he had with Jim Maxwell, the Roswell police department internal affairs officer. Here is how he comes to that conclusion.

First, Detective Tucker testified that Mr. Wattleton accussed him of follbwing him around the country. And the government's experts believed that this statement was evidence of psychosis. Thus, the videotape was relevant because it depicted Mr. Wattleton as delusional and had the " tendency " to make the opinion that he was suffering from a delusional di disorder during the encounter more or less probable than if the videotape did not exist. And because the government's expert did not offer no additional evidence in support of their opinion regarding the encounter the government had a duty to produce the videotape. See, United States v Varner, 467 F.2d 659, 661 (5th Cir 1972)( government has duty to report to the court information causing him to have reasonable doubt as to the mental state of defendant).

    VI.   WHETHER THIS COURT HAS PERSONAL JURISDICTION

Mr. Wattleton believes that although he is currently being held at the Federal Medical Center - Devens in Ayers, Massachusetts and the appropriate custodian in this case is

Warden David Winn the Northern District of Georgia, Atlanta Division is the only court that " may grant the statutory relief he seeks." Archuletta, 365 F.3d. at 649. Moreover, all of the annual forensic update reports regarding Mr. Wattleton's condition are sent to the Honorable Judge Thomas W. Thrash, Jr., and thus, there is a " substantial relationship between the claims asserted and the jurisdiction. See also, Braden v 30th Judicial Circuit Court of Kentucky, 410 U.S. 484, 495, 499 (1973)(holding that a district court in Kentucky had personal jurisdiction over a case filed by an inmate in Alabama).

In conclusion, as Mr. Wattleton believes that he has demonstrated an indisputeable right to file his section 2241 petition without the assistance of counsel he request that this Court should transfer the petition to the United States District Court for the Northern District of Georgia, Atlanta for the proper dispositionf this case.

Respectfully submitted,

David Wattleton
Pro Se

11